UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANGELA GROSSO )<br>    Plaintiff )<br> )<br>v. )<br> )<br>THE HARTFORD AUTO GROUP INC. d/b/a )<br>BARBERINO MITSUBISHI-HARTFORD, )<br>BARBERINO CAR COUNTRY, LLC d/b/a )<br>BARBERINO MITSUBISHI )<br>and )<br>SANTANDER CONSUMER USA, INC. )<br>    Defendants )<br> ) | CIVIL ACTION NO.<br><br><br><br><br><br><br><br><br><br><br>SEPTEMBER 25, 2017 |

**COMPLAINT**

I. **INTRODUCTION**

30. This is a suit brought by a consumer under the Equal Credit Opportunity Act, 15 U.S.C. § 1690 *et seq.* ("ECOA"); Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA") ; and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42a-110a *et seq.*, against The Hartford Auto Group Inc. d/b/a Barberino-Mitsubishi Hartford ("Barberino Hartford"), Barberino Car Country, LLC d/b/a Barberino Mitsubishi ("Barberino Mitsubishi) and against Santander Consumer USA ("Santander") as the assignee of a retail installment sales contract and pursuant to CUTPA. Plaintiff brings this action to pursue actual damages, punitive damages, injunctive relief and reasonable attorney's fees and costs.

II. **PARTIES**

1. Angela Grosso ("Plaintiff") is an individual who resides in Waterbury, Connecticut.

1

2. Barberino Hartford is a Connecticut stock corporation with a business address in Hartford, Connecticut, and it operates a car dealership in Hartford, Connecticut.

3. Barberino Watertown is a Connecticut limited liability company that, in July 2017, operated a car dealership in Watertown, Connecticut.

4. Defendant Santander Consumer USA ("Santander") is an Illinois corporation with principal offices in Dallas, Texas.

### III. JURISDICTION

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 2310(d),15 U.S.C. § 1691e(f)  and Fed. R. Civ. P. 18(a).

6. This Court has jurisdiction over Barberino Hartford and Barberino Watertown because they are organized under the laws of the state of Connecticut and regularly conduct or conducted business in this state.

7. This Court has jurisdiction over Santander because it regularly conducts business in this state.

8. Venue in this Court is proper, because the Plaintiff resides in Connecticut and the transaction occurred in this state.

### IV. FACTUAL ALLEGATIONS

9. In July of 2017, Barberino Watertown and Barberino Hartford were among several dealerships that had common ownership and management (the "Barberino Dealerships"), and they were both authorized Mitsubishi dealerships.

10. Barberino Watertown ceased doing business at the end of July or in early August 2017.

11. Prior to July 26, 2017, Plaintiff had seen and heard advertisements by the Barberino Dealerships, including Barberino Watertown, in which they claimed that consumers who had a job and a minimal amount to pay for a down payment could be approved for financing.

12. Plaintiff called Barberino Watertown, which was nearby her home in Waterbury, and inquired about how much she might receive as a trade-in allowance for her car, a 2004 Infiniti G35 with nearly 200,000 miles on the odometer (the "Infiniti").

13. The individual at Barberino Watertown with whom Plaintiff spoke informed her that she would receive an allowance of $3,500 for her Infiniti.

14. The actual trade-in value for the Infiniti was substantially less than $3,500.

15. This quote of $3,500 was consistent with a promotion frequently advertised by the Barberino Dealerships known as "Cash for Junkers" in which it promised to provide a trade-in allowance of $3,500 for any vehicle, regardless of its age or condition.

16. On or about July 26, 2017, Plaintiff went to Barberino Watertown to look for a vehicle.

17. Plaintiff was approached by a salesperson named Brian who showed her a 2014 Hyundai Elantra (the "Vehicle").

18. Prior to July 26, 2017, the Vehicle was advertised for a cash price of $12,600 online with no disclosure of any dealer conveyance fee.

19. This was the only Vehicle that Brian, or any other Barberino Watertown representative, showed Plaintiff.

20. The Vehicle did not have an FTC Buyer's Guide on the window when Plaintiff looked at it.

21. Brian asked Plaintiff how much she could afford to pay as a down payment, and Plaintiff responded that she had only $1,000 in her savings.

22. Plaintiff asked Brian what the cost of the Vehicle was, and Brian responded that he did not know.

23. Brian's refusal to quote a price is consistent with a business practice of the Barberino Dealerships to "size up" customers and, for those perceived as vulnerable and gullible (known within the Barberino Dealerships' organizations as "Getovers"), to charge them higher prices (relative to sophisticated buyers) and to "pack" their contracts with extras of little value compared to their cost.

24. Plaintiff is a 72-year old single woman, and her sole source of income is social security and income from part-time work in a Waterbury public elementary school cafeteria, and Barberino Watertown's employees ascertained that she was a "Getover" from whom it could make a higher profit than it would on a sale to a more sophisticated buyer.

25. Plaintiff also spoke with a man named Dave, believed to be a sales manager, who told her that she was "approved" for the Vehicle.

26. Plaintiff asked what she was "approved" for, and Dave told her that she was approved for financing at $264/month for 72 months.

27. Brian and Dave both told Plaintiff that the Vehicle was the only vehicle for which she could be approved for financing.

28. This was a false and deceptive statement, because Barberino Watertown had other vehicles in its inventory that were less expensive, and the third party finance companies with whom Barberino Watertown deals, including Santander, make credit decisions based upon an applicant's income, credit, and other obligations, the amount being financed, and the value of the vehicle being purchased.

29. On information and belief, Barberino Watertown steered Plaintiff to the Vehicle and told her that it was the only one that she could purchase because the Vehicle had been identified as a low quality Vehicle that was not in merchantable condition, and Barberino Watertown wanted to unload it off to Plaintiff.

30. Specifically, prior to the time of the sale, the Vehicle had been in an accident or other event that caused structural damage to left side unibody.

31. As a consequence of this structural damage, the Vehicle was not safe to drive and would not provide an occupant with the degree of safety that a comparable vehicle without such damage would provide in the event of a vehicle impacted the driver's side.

32. The damage to the Vehicle would have been apparent to any automotive professional conducting a simple visual inspection.

33. Consequently, Plaintiff believes and alleges that Barberino Watertown knew of the prior damage and steered her to the Vehicle because of its lower value.

34. Specifically, because of its damage, the value of the Vehicle was approximately $2,125 less than value it would have if it did not have the structural damage.

35. Plaintiff did not know about the Vehicle's structural damage.

36. Before agreeing to purchase the Vehicle, Plaintiff again asked what the price of Vehicle was, and Dave told her that he did not know precisely, but that it was "about $9,000" and that she would be told the exact amount when she returned to execute contract documents.

37. Brian persuaded Plaintiff to pay her only $1,000 as a deposit, and he rode with her to a bank so that she could withdraw the money.

38. Barberino Watertown did not provide Plaintiff with any documentation for the deposit, and it did not provide her with any information regarding the conditions upon which the deposit was refundable.

39. Plaintiff decided to pay the deposit, because she believed that the price that she was paying for the Vehicle was going to be approximately $9,000, and she further believed that her monthly payment was going to be approximately $264/month.

40. Plaintiff also believed that she had 3 days in which to cancel the transaction, because it was her impression that the law provided her with that right and Barberino Watertown had not informed her of any other policy regarding refunds.

41. Plaintiff was given a loaner vehicle to drive home, and she left her Infiniti with Barberino.

42. Upon returning home that evening, Plaintiff realized that she was unable to afford monthly payments of $264/month.

43. She returned to Barberino on the next day and spoke with Dave, and she told him that she could not afford the Vehicle and requested that he give her back her Infiniti and refund her $1,000 deposit.

44. Dave told Plaintiff that the deposit was non-refundable and that she would have to proceed with the purchase.

45. Dave also told Plaintiff that if she refused to do so, she would lose both her $1,000 and her Infiniti and would not have any vehicle to drive.

46. Plaintiff was extremely distressed and crying, and she pleaded with Dave to refund her money and return her Infiniti, informing him that the deposit was all the money that she had and that she needed a car to get to her part-time job.

47. Dave persisted in his refusal and told Plaintiff that she had no choice.

48. Plaintiff returned on July 28 and met with Brittany Barberino, who presented her with contract documents.

49. Plaintiff told Brittany Barberino that she did not want to purchase the Vehicle and that she could not afford it, but Brittany Barberino ignored her and handed her various documents and, without explaining them, told Plaintiff where she should sign.

50. Believing that she had no option, Plaintiff signed the documents presented by Brittany Barberino.

51. Consistent with the promise made by Barberino Watertown, the contract documents provided that Plaintiff was receiving an allowance of $3,500 for her Infiniti.

52. Although Plaintiff had been dealing at all times with Barberino Watertown and had never been to Barberino Hartford, the contract documents all provided that the seller of the Vehicle was Barberino Hartford.

53. Unbeknownst to Plaintiff, the purchase price of the Vehicle in the contract documents was $14,170.69, an amount substantially greater than the price quoted by

Dave of approximately $9,000 and was also substantially greater than the advertised price of $12,600.

54. Also unbeknownst to Plaintiff, the monthly payments under the retail installment contract were $286.74, which was 8.6% more than the $264 payment quoted by Dave, which Plaintiff had already concluded she could not afford.

55. Plaintiff was not given a Connecticut Department of Motor Vehicles Form K-208 as required by Conn. Gen. Stat. § 14-62(g).

56. Plaintiff took delivery of the Vehicle without having discovered that the Vehicle's price and the monthly payment amount was greater than what had previously been disclosed and without knowledge of the structural damage.

57. The retail installment sales contract (the "Contract") was assigned to Santander.

58. On information and belief, Barberino Watertown or Barberino Hartford provided false credit information to Santander regarding the Plaintiff in order to persuade it to accept assignment of the Contract.

59. Plaintiff subsequently had the Vehicle inspected by an independent auto body expert and appraiser, who informed her of the structural damage and unsafe condition of the Vehicle.

60. Plaintiff returned the Vehicle to Barberino Hartford on approximately August 17, 2017 and, by her attorney, sent written notice on August 18, 2017 to Barberino Hartford and to Santander that she had revoked her acceptance of the Vehicle or, alternatively, was rescinding the Contract, and notified them of the claims set forth in this Complaint.

61. The defendants have refused to refund the Plaintiff's $1,000 down payment and have refused to restore to her the value of the Infiniti, and Plaintiff has been without a car since the return of the Vehicle.

62. Pursuant to the terms of the Contract, the FTC holder rule and Conn. Gen. Stat. § 52-572g, Santander is subject to these claims and Plaintiff's defenses.

63. Barberino Hartford is the successor to Barberino Watertown and is liable for Plaintiffs' claims against Barberino Watertown, as evidenced by the re-routing of the Barberino Watertown website to Barberino Hartford, the sale of vehicles in Barberino Hartford's name at Barberino Watertown's location, the sharing of employees and management, and the interconnectedness of the two businesses.

## V.  CAUSES OF ACTION

**COUNT ONE – Equal Credit Opportunity Act (All Defendants)**

63. Plaintiff, as a single woman who is 72 years old is a member of several protected classes under the ECOA.

64. Barberino Watertown engaged in predatory sales and financing practices as alleged above that have a disparate impact on single women and the elderly.

65. Barberino Watertown steered Plaintiff towards a single vehicle on its lot and told her that it would finance only that vehicle.

66. Barberino discouraged Plaintiff from applying for credit for less expensive or higher quality vehicles and imposed less favorable terms than would have been available to someone not in her status.

67. Barberino violated the ECOA, and the Defendants are liable to Plaintiff for actual damages, punitive damages up to $10,000, attorney's fees and costs.

**COUNT TWO – Breach of Implied Warranty of Merchantability (Barberino Hartford and Santander)**

68. Barberino Hartford is a "merchant" as that term is defined in Conn. Gen. Stat. § 42a-2-104.

69. The Vehicle constitutes "goods" as that term is defined in Conn. Gen. Stat. § 42a-2-105.

70. The Vehicle is a consumer product as that term is defined in § 2301(1) of the MMWA.

71. A warranty that the Vehicle was in merchantable condition at the time of sale was implied in the Contract by operation of Conn. Gen. Stat. § 42a-2-314.

72. Barberino Hartford breached the implied warranty of merchantability because the Vehicle was not in merchantable condition at the time of sale to Plaintiff. Specifically, the Vehicle had structural damage that rendered the Vehicle unsafe to operate.

73. Barberino Hartford's breach of the implied warranty of merchantability was tortious in nature, in bad faith, was wanton and malicious, outrageous, and was undertaken with bad motive and with a reckless indifference to Plaintiff's interest and the injury that she sustained, entitling her to claim common law punitive damages.

74. For Barberino Hartford's breach of the implied warranty of merchantability, Plaintiff is entitled to actual damages, a refund of the amounts she has paid, plus attorney's fees and costs under the MMWA, 15 U.S.C. § 2310(d).

**COUNT THREE – Connecticut Unfair Trade Practices Act (All Defendants)**

75.     Barberino Watertown and Barberino Hartford violated the Connecticut Unfair Trade Practices Act ("CUTPA") by engaging unfair and deceptive acts, as alleged above.

76.     These violations include the following:

a.     They sold the Vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price;

b.     They offered a $3,500 allowance for the Infiniti even though the Infiniti was worth substantially less, and it added the amount that it overallowed to the price that it charged for the Vehicle;

c.     They failed to disclose the dealer conveyance fee as part of the advertisement in violation of Conn. Gen. Stat. § 14-62a, which is a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(23);

d.     They failed to disclose the dealer conveyance fee prior to presenting contract documents;

e.     They failed to append the FTC Buyers Guide sticker to the Vehicle's window while it was being displayed, a violation of regulations of the Federal Trade Commission and a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(23);

f.     They failed to disclose the terms under which the deposit was refundable;

      g.      They refused to return Plaintiff's deposit when they had not disclosed to her the terms under which she would be purchasing and financing the Vehicle.

      h.      They misrepresented the Vehicle's price and the monthly payment amount;

      i.      They conducted a sale at Barberino Watertown in the name of Barberino Mitsubishi in violation of CT Department of Motor Vehicle prohibition against dealerships conducting business at locations other than the addresses listed on their license;

      j.      Barberino Watertown listed the name of a different dealership on the purchase order;

      k.      They failed to provide the Plaintiff with a purchase order at the time she paid her deposit and failed to provide Plaintiff with Barberino's refund policy with respect to the transaction in violation of Conn. Gen. Stat. § 14-62;

      l.      They failed to perform a safety inspection on the Vehicle as required by Conn. Gen. Stat. § 14-62(g) or, if they did perform a safety inspection, they sold the Vehicle notwithstanding the defects and without furnishing Plaintiff with a copy of the CT DMV K-208 form as required by Conn. Gen. Stat. § 14-62(g), a *per se* violation of CUTPA pursuant to Conn Gen. Stat. § 42-110b-28(b)(23).

77.      As a result of the aforesaid conduct Plaintiff has suffered an ascertainable loss of money and property in the form of the loss of deposit, the increased purchase

price over the advertised cost and a Vehicle worth substantial less due to the undisclosed defects.

78. Plaintiff is entitled to recover her actual damages plus, in the Court's discretion, costs, attorney's fees, and punitive damages, pursuant to Conn. Gen. Stat. § 42-110g.

79. Plaintiff also seeks equitable relief under CUTPA in a form of an order that she validly rescinded the Contract.

**COUNT FOUR - Connecticut Unfair Trade Practices Act (Santander Only)**

80. On information and belief, Barberino Watertown or Barberino Hartford or both engaged in credit application fraud as her monthly income is very low and she was approved for financing in an amount that is close to the entirety of her income. Therefore, her monthly income was inflated to induce acceptance by Santander.

81. Additionally, the Contract lists a New Haven address for Plaintiff, even though she resided at all relevant times in Waterbury,

82. Santander is on notice that the car dealerships frequently engage in credit application fraud and collaborates in such conduct with the dealerships. This is evidenced by two settlement agreements it entered into with the Delaware Consumer Protection Director and Massachusetts Attorney General. *See In the Matter of Santander Consumer USA Holdings Inc.*, CPU Case No. 17-17-17001637, Del. Consumer Protection Director (March 29, 2017); *In the Matter of Santander Consumer USA Holdings Inc.*, Civil Action No. 17-946E (Mass. Super. Ct., March 29, 2017).

83. Santander's awareness is further evidenced by its Second Quarter 2017 Earnings Presentation, wherein it acknowledges it needs to increase its oversight over

dealerships' credit applications through verification of consumers' income and employment.

84.     Santander has been involved in other lawsuits alleging credit application fraud involving the Barberino dealerships.

85.     Consumers are harmed by this practice, because dealers force them to enter into financing arrangements they cannot afford and often default.

86.     Dealers are aided and abetted by Santander, because it accepts assignment of the retail installment sales contracts formed with fraudulent information without verifying income or residency.

87.     Because Santander colluded with Barberino in approving the fraudulent credit application the sale of Vehicle to Plaintiff, Plaintiff is in a position to forfeit the amounts she has paid and have her credit adversely impacted.

88.     Plaintiff suffered an ascertainable loss due Santander's aforedescribed conduct.

89.     Santander is liable to Plaintiff for actual damages, punitive damages, attorney's fees and costs.

WHEREFORE, Plaintiff prays for the following relief: Monetary damages, Punitive damages up to $10,000 pursuant to ECOA; punitive damages pursuant to MMWA and CUTPA; Attorney's fees and costs pursuant to CUTPA, MMWA and ECOA; and an order stating that Plaintiff validly revoked acceptance or in the alternative rescinded the Contract

        PLAINTIFF, ANGELA GROSSO

        By: /s/ *Daniel S. Blinn*
        Daniel S. Blinn (ct02188)
        Consumer Law Group, LLC
        35 Cold Spring Rd. Suite 512
        Rocky Hill, CT  06067
        Tel. (860) 571-0408
        Fax. (860) 571-7457
        dblinn@consumerlawgroup.com